
IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JONATHAN BLOUNT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:17-CV-1014-A |
| | § | |
| CITY OF DALWORTHINGTON GARDENS, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Came on for consideration the second motion of defendant City of Dalworthington Gardens ("City") to dismiss. The court, having considered the motion, the response of plaintiff, Jonathan Blount, the record, and applicable authorities, finds that the motion should be granted.

I.

Plaintiff's Claims

On September 1, 2017, plaintiff filed his complaint in the Dallas Division of this court. Doc.[1] 1. By order signed December 20, 2017, the action was transferred to the docket of the undersigned for possible consolidation with No. 4:17-CV-720-A. Doc. 7. The court ordered plaintiff to file proof of proper service of the complaint on the individual defendants named in the complaint, cautioning that failure to comply with the order

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

.ght result in the dismissal of plaintiff's claims against the individual defendants without further notice. Doc. 10. Plaintiff failed to do so. By order signed January 2, 2018, the court ordered that the claims against the individual defendants be dismissed, Doc. 13, and by final judgment as to certain parties also signed that date, made the judgment of dismissal final. Doc. 14.

After the court denied City's motion to dismiss for lack of proper service, Doc. 32, City filed a Rule 12(b)(6) motion to dismiss. Doc. 33. After considering the motion, the response, Doc. 36, and the reply, Doc. 37, the court ordered plaintiff to file an amended complaint to state specifically his claims against City. Doc. 38. As reflected in the order, plaintiff had failed to state any plausible claims against City. The order did not authorize plaintiff to add any other parties when he filed his amended complaint. Nor did plaintiff seek leave to do so.

On May 4, 2018, plaintiff filed his amended complaint, referring to the individual defendants who had previously been dismissed as well as Bill Waybourn ("Waybourn"), and purporting

to add "Officer Does 1-10" and possibly Waybourn as defendants.[2] Doc. 39. Plaintiff alleged:

On September 1, 2015, plaintiff was at his home in the City of Arlington when an alarm was activated at 3715 Dustin Trail in the City of Dalworthington Gardens (the "property"). Doc. 39 ¶ 12. Officers from City appeared at the front gate of the property with wire cutters and opened the gate. Id. ¶ 13. Plaintiff went to the property, "making every attempt to understand why" ten to fifteen officers "were at his home."[3] Id. ¶ 14. The officers did not present any documentation giving them legal authority to remove plaintiff from the property; plaintiff produced a deed showing that he was the rightful owner and had possession of the property. Id. ¶ 18. Plaintiff was "handcuffed dragged from his home leaving all his possession [sic] behind, except for one vehicle and his animals, told to leave his property and that he was criminally trespassing and threaten [sic] not to return or he would be rearrested for Criminal Trespassing." Id. ¶ 19.

---

[2]The amended complaint purports to amend the caption to include "Officer Does 1-10" and Waybourn as defendants. However, Waybourn is not named as a party in the "Parties" section. Doc. 39 at 2. As best the court can tell, the only reference to Waybourn is made under the heading "State Action" where plaintiff avers that the unidentified officers were acting at the direction of Waybourn. Id. ¶ 9.

[3]Plaintiff does not explain why he has or had two homes.

3

Further:

> 20. Despite the officer's actions, [plaintiff] did not become aggressive or hostile, but he simply continued to ask the officers why they were roughing him up, placing him in handcuffs and removing him from the comfort of his home. They became rough with [plaintiff] and begin [sic] to grab and twist his arm and ultimately forcing him to the ground placing handcuffs on [plaintiff]. Additionally, his legs were shackled before he was removed from the property.
> 21. Defendant Officers eventually threw [plaintiff] with handcuffs into the back of a police car and drove him away with just the clothes on his back.
> 22. [Plaintiff] was never charged with a crime and was never allowed to return to his property.
> 23. No eviction notice was provided. No eviction proceeding was conducted. No writ of possession was issued.
> 24. [Plaintiff] suffered a black eye and numerous bruises and abrasions as a result of the Defendant Officers' assault.
> 25. [Plaintiff] lost his home and all of his belongings as a result of Defendants' unlawful actions.

Id. ¶¶ 20-25.

Plaintiff purports to assert claims for excessive force (Count One), City's failure to train, supervise and discipline (Count Two), unlawful detention/false arrest (Count Three), denial of due process (Count Four), negligence (Count Five), gross negligence (Count Six), assault and battery (Count Seven), and intentional infliction of emotional distress (Count Eight).

II.

Grounds of the Motion

City says that plaintiff has failed to allege facts sufficient to establish any underlying constitutional violation

4

and that he has not alleged facts to establish that a policy, custom, or practice of City caused any constitutional violation. Further, City is immune from any state law claims. And, City cannot be held liable for exemplary damages.

### III.

### Applicable Legal Standards

A.  <u>Pleading</u>

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. <u>Twombly</u>, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide

the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Id. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

As the Fifth Circuit has explained: "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." Anderson v. U.S. Dep't of Housing & Urban Dev., 554 F.3d 525, 528 (5th Cir. 2008). In sum, "a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws. In other words, a complaint

6

must put the defendant on notice as to what conduct is being called for defense in a court of law." Id. at 528-29. Further, the complaint must specify the acts of the defendants individually, not collectively, to meet the pleading standards of Rule 8(a). See Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999); see also Searcy v. Knight (In re Am. Int'l Refinery), 402 B.R. 728, 738 (Bankr. W.D. La. 2008).

B.   Municipal Liability Under § 1983

The law is clearly established that the doctrine of respondent superior does not apply to § 1983 actions. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990). Liability may be imposed against a municipality only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. Connick v. Thompson, 563 U.S. 51, 60 (2011). Local governments are responsible only for their own illegal acts. Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Thus, plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. Monell, 436 U.S. at 691. Specifically, there must be an affirmative link between the policy and the particular

constitutional violation alleged. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

Proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy, which policy can be attributed to a municipal policymaker. Tuttle, 471 U.S. at 823-24. (If the policy itself is not unconstitutional, considerably more proof than a single incident will be necessary to establish both the requisite fault and the causal connection between the policy and the constitutional deprivation. Id. at 824.) Thus, to establish municipal liability requires proof of three elements: a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued en banc in response to a motion for rehearing in Bennett v. City of Slidell:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

8

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

The general rule is that allegations of isolated incidents are insufficient to establish a custom or policy. Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992); McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989); Languirand v. Hayden, 717 F.2d 220, 227-28 (5th Cir. 1983).

C.  Excessive Force

The elements of an excessive force claim are (1) an injury, (2) that resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable. Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007).

The reasonableness of use of force is to be determined from the perspective of the officer on the scene and not with "the 20-20 vision of hindsight." Mace, 333 F.3d at 625 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). That the officer himself may have created the situation does not change the analysis. In other words, that the officer could have handled the situation better

9

is not a factor in the constitutional analysis. <u>Young v. City of Killeen</u>, 775 F.2d 1349, 1352-53 (5th Cir. 1985). See also <u>City & Cty. Of San Francisco v. Sheehan</u>, 135 S. Ct. 1765, 1777 (2015)(failure to follow training does not itself negate entitlement to qualified immunity). And, if there is no underlying constitutional violation by the officer, i.e., no excessive force, then his employer cannot be held liable. <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986).

D.   <u>Texas Tort Claims Act</u>

Under the Texas doctrine of sovereign immunity, a governmental entity cannot be held liable for the actions of its employees unless a constitutional or statutory provision waives its sovereign immunity in clear and unambiguous language. See <u>Univ. of Tex. Med. Branch v. York</u>, 871 S.W.2d 175, 177 (Tex.1994); <u>Duhart v. State</u>, 610 S.W.2d 740, 742 (Tex.1980). The Texas Tort Claims Act provides such a waiver in certain circumstances. Tex. Civ. Prac. & Rem. Code § 101.025; <u>York</u>, 871 S.W.2d at 177. However, the Act does not waive immunity with respect to claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code § 101.057(2); see <u>Goodman v. Harris County</u>, 571 F.3d 388, 394 (5th Cir. 2009). Use of excessive force is an intentional tort and an alternative negligence pleading cannot

10

save the claim where the claim is based on the same conduct as the intentional tort claim. Saenz v. City of El Paso, 637 F. App'x 828, 830-31 (5th Cir. 2016); Cox v. City of Fort Worth, 762 F. Supp. 2d 926, 935 (N.D. Tex. 2010).

IV.

Analysis

One of the first matters addressed by the motion to dismiss is plaintiff's purported attempt to name additional defendants in his amended complaint. Doc. 40 at 8 & n.1. Plaintiff makes no response, apparently recognizing that the court did not grant leave to add additional defendants and that they have not been properly joined. Plaintiff has not stated a claim against Waybourn or the unidentified Does in any event. Moreover, the federal rules do not provide for the naming of fictitious parties and the court lacks jurisdiction over them. Taylor v. Federal Home Loan Bank Bd., 661 F. Supp. 1341, 1350 (N.D. Tex. 1986). And, even assuming plaintiff could state plausible claims against Waybourn or the Does, the time for doing so has long expired. Owens v. Okure, 488 U.S. 235, 249-50 (1989); Flores v. Cameron Cnty., 92 F.3d 258, 271 (5th Cir. 1996). Accordingly, these claims are being dismissed.

City's argument as to the constitutional claims is two-fold. First, plaintiff has failed to adequately plead his underlying

claims for violation of the Fourth, Fifth, and Fourteenth Amendments.[4] And second, even if he has pleaded a constitutional violation, plaintiff has failed to adequately plead that a City policy was the moving force behind any such violation. The court need not take up the first argument[5] as it is obvious that plaintiff has not sufficiently alleged facts to show that a City policy caused any constitutional harm to him.

A good part of plaintiff's response is devoted to a "summary of facts" including facts not alleged in the amended complaint. See, e.g., Doc. 41 at 5, ¶ 3.[6] And, although plaintiff recites the test for asserting a claim against a municipality, Doc. 41 at 14, he glosses over the specificity required to meet the test. In essence, he argues that his conclusory allegations are sufficient.

As stated, supra, the requisite elements of a claim of municipal liability are a policymaker, an official policy, and a

---

[4] The court notes that plaintiff concedes he has not pleaded any Fifth Amendment claims. Doc. 41 at 21.

[5] With regard to the sufficiency of the underlying claims, the court notes that the few facts pleaded by plaintiff are internally inconsistent and it is not clear whether plaintiff was actually arrested or temporarily detained. Further, it appears that plaintiff suffered only a de minimis injury insufficient to support an excessive force claim. See Freeman v. Gore, 483 F.3d 404, 416-17 (5th Cir. 2007). And, plaintiff has pleaded nothing more than conclusory allegations with regard to the alleged due process violation.

[6] The court notes that the response also contains arguments based on other facts not pleaded that would have been material to plaintiff's claims. See, e.g., Doc. 41 at 17 (apparently admitting that plaintiff was a trespasser at the time of the events giving rise to his claims).

violation of constitutional rights whose moving force is the policy. Piotrowski, 237 F.3d at 578. Although plaintiff has arguably identified a policymaker, he has not pleaded facts to establish the existence of any policy, custom, or practice. That is, plaintiff has not identified a policy statement, ordinance, regulation, or decision officially adopted and promulgated by City. Bennett, 735 F.2d at 862. Nor has he shown a persistent, widespread practice so common and well-settled as to constitute a custom that fairly represents City's policy. Id. See Zarnow v. City of Wichita Falls, 614 F.3d 161, 169 (5th Cir. 2010)(a custom "consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the conduct"). To show a custom or practice, plaintiff must demonstrate a "pattern of abuses that transcends the error made in a single case." Piotrowski, 237 F.3d at 582. A pattern requires similarity and specificity; prior incidents cannot simply include bad or unwise acts, but must point to the specific violation in question. Peterson v. City of Fort Worth, 588 F.3d 838, 851 (5th Cir. 2009).

Here, plaintiff alternately argues that there was a policy or that there was a failure to adopt a policy, but he never identifies a specific policy; nor does he cite to any similar

13

instances to demonstrate a pattern that would support the finding of a custom or practice.[7] For example, plaintiff recognizes that to state a failure to train theory of liability against City, he must demonstrate that City's training policy was inadequate; City was deliberately indifferent in adopting its training policy; and, the inadequate training policy directly caused the violations in question. Doc. 41 at 16. He says that he specifically alleged that City "developed and maintained a policy of deficient training of its police force in the use of force and due process." Id. at 16-17 (citing Doc. 1, p. 6 ¶ 12).[8] He does not identify, and the court cannot find, in the amended complaint any allegations regarding what the policy was or how or why the policy was deficient or a pattern of similar constitutional violations from which deliberate indifference could be discerned. See Connick, 563 U.S. at 62. Even though plaintiff does allege, on information and belief, that City officers are trained based upon Texas Commission on Law Enforcement requirements and that such training does not include training on evictions, Doc. 39 ¶ 37, this is not the type of case where the inadequacy of the

---

[7] The conclusory arguments plaintiff makes about other "excessive force complaints and several lawsuits for violating citizens' constitutional rights" in his response, Doc. 41 at 19, do not make up for his failure to plead any specific facts relative to policy, custom or practice.

[8] The citation is incorrect and apparently refers to the original complaint. The same paragraph is found in the amended complaint at ¶ 39.

14

training is obvious and obviously likely to result in a constitutional violation. See Goodman v. Harris Cnty., 571 F.3d 388, 395 (5th Cir. 2009)(noting that only in extreme circumstances--such as shooting anything that moves and killing an innocent bystander--can a single violation be sufficient be sufficient to show a custom or policy). Plaintiff's amended complaint does not state a claim against City based on alleged constitutional violations.

Plaintiff fails to respond to the contention that City is immune from his state law tort claims. Nor does he argue that City is not immune from exemplary damages. He apparently concedes that dismissal of those claims is appropriate.

Finally, plaintiff mentions at the end of his response that if the court finds his pleading to be deficient in any way, the court grant him leave to amend. As he states, "the court should generally give the plaintiff at least one chance to amend." Doc. 41 at 24. Of course, in this case, plaintiff has already had that chance and his amended pleading fares no better than the original.

V.

Order

The court ORDERS that City's motion to dismiss be, and is hereby, granted, and that plaintiff's claims in this action be,

and are hereby, dismissed.

SIGNED June 7, 2018.

_____
JOHN McBRYDE
United States District Judge